## Case No. 13,887.

### In re THOMAS.

[12 Blatchf. 370.] 1

Circuit Court, S. D. New York. Nov. 5, 1874.

EXTRADITION — TREATY — EXECUTIVE MANDATE — PROCEEDINGS IN FOREIGN JURISDICTION — BAVARIA—GERMAN EMPIRE.

1. In cases where a treaty of extradition with a foreign country for the surrender of fugitives from justice does not require the issuing of an executive mandate, as a prerequisite to the en-tertaining of proceedings, and the issuing of a warrant of arrest, by a magistrate, such a pre-requisite is not necessary.

[Cited in Castro v. De Uriarte, 12 Fed. 251, 16 Fed. 96.]

[Cited in People v. Board of Sup'rs of Colum-bia Co., 134 N. Y. 6, 31 N. E. 324.]

2. The convention for extradition between the United States and Bavaria, of September 12, 1853 (10 Stat. 1022), was not abrogated by the operation of the constitution of the German em-pire, adopted in 1871, as affecting the further in-dependent existence of Bavaria.

[Cited in Wunderle v. Wunderle, 144 Ill. 56, 33 N. E. 195.]

1 [Reported by Hon. Samuel Blatchford, Dis-trict Judge, and here reprinted by permission.]

3. The sufficiency of the complaint before the commissioner, upheld.

4. It is not a necessary preliminary to an in-vestigation here, under an extradition treaty, that a warrant of arrest should have been issued, or proceedings had, against the accused, in the foreign jurisdiction.

[Cited in Re Roth, 15 Fed. 508.]

[Cited in People v. Board of Sup'rs of Colum-bia Co., 134 N. Y. 6, 31 N. E. 324.]

At law.

Edward Salomon, for the German govern-ment.

Charles W. Brooke, for relator.

BLATCHFORD, District Judge. On the 2d of September, 1874, a warrant was issued by a United States commissioner, on the complaint of the vice consul of the German empire at the city of New York, for the arrest of Hermann Thomas, charged with having committed the crimes of forgery and the utterance of forged papers, within 'the jurisdiction of the kingdom of Bavaria and of the empire of Germany. The proceeding was one taken with a view to the extradi-tion of Thomas, under the provisions of the convention of September 12, 1853, between the United States and the kingdom of Ba-varia. 10 Stat. 1022. Thomas was arrested and brought before the commissioner on the 3d of September, the charge was explained to him, and he demanded an examination, and the proceedings were adjourned by con-sent to the 17th of September, and he was committed in the meantime to the custody of the marshal.

The complaint on which the warrant was issued is made, subscribed and sworn to by August Feigel. It sets forth, that Mr. Feigel "is vice consul of the German empire at the city and port of New York, duly recognized as such by the president of the United States; that, as such, he is, also, ex officio, consul of each of the states composing said empire; that the kingdom of Bavaria is one of the states composing said empire;" and "that, as such vice consul, he is at present in charge of the office of the consul general of the German empire at the city of New York, and authorized to discharge the functions of such consul general." The complaint alleges, that, as the complainant, "from official evi-dence in his possession is informed and be-lieves," Thomas, on or about the 22d of June, 1874, at Nürnberg, in the kingdom of Bava-ria, and within the jurisdiction of said king-dom, committed the crimes of forgery and of utterance of forged papers, in this, that he did then and there, feloniously and falsely, and with intent to defraud the Royal Bank at Nürnberg, make, forge and counterfeit a certain receipt or acquittance of Carl Con-rad Cnopf & Sohn, bearing date at Nürnberg, whereby it was stated that the said Carl Conrad Cnopf & Sohn had received of the Royal Bank at Nürnberg the sum of 15.000 guilders, Bavarian money, while, in truth

and in fact, the said Carl Conrad Cnopf & Sohn had not executed, or authorized to be executed, the said paper writing, purporting to be a receipt or acquittance, as aforesaid, but the same was forged by the said Thomas, and that he did afterwards, within the jurisdiction of the kingdom of Bavaria, feloniously, falsely and fraudulently utter the said forged instrument in writing, knowing it to be forged, with intent to defraud the said Royal Bank at Nürnberg. The complaint then sets forth the information of the complainant concerning the commission of said crimes by Thomas. He received, August 29, 1874, a cable telegram, of which a translation is given, signed "Ilgen, examining judge, Nürnberg," and reading thus: "The arrest of the clerk H. Thomas of this place is requested on account of forgery of documents and defrauding to the amount of 15,000 guilders. He travelled as Wolfing. Photograph in the possession of Schulz & Ruckgaber, Exchange Place, New York, where also dwelling ascertainable. Particulars follow upon answer." On the 31st of August the complainant sent a telegram to the said examining judge in these words: "Telegraph particulars of Thomas forgery; full names of injured parties; also, whether extradition demanded." On the 1st of September he received from said examining judge a telegram in these words: "Thomas obtained from the Royal Bank here 15,000 guilders on forged receipt of Cnopf & Sohn. Extradition." The complaint further sets forth, that the complainant knows said Ilgen, whose name is subscribed to said telegrams, to be royal examining judge at Nürnberg, and has seen in a newspaper printed at Berlin, in Germany, a copy of an order of arrest issued by the royal examining judge at Nürnberg, on the 2d of July, 1874, for the arrest of said Thomas on account of forgery of documents and frauds committed by him on the 22d of June, 1874; that Thomas, after the commission of said crimes, "fled from the jurisdiction of said kingdom of Bavaria and of the empire of Germany:" that, through the minister of the German empire at Washington, the complainant caused to be made an application for the issuing of the usual executive mandate in such cases; and that, upon the receipt of such mandate; the same will be forthwith presented to the officer to whom the complaint is to be presented.

On the 8th of September, 1874, the usual mandate was issued from the department of state. It states, that, pursuant to the said convention of September 12, 1853, the envoy and minister plenipotentiary of the German empire, accredited to this government, has applied to the government of the United States for the arrest of Thomas, "charged with the crimes of forgery and the utterance of forged papers, and alleged to be a fugitive from the justice of Bavaria (German empire)."

On the 17th of September, 1874, no proceedings having taken place before the commissioner other than those before mentioned, the counsel for Thomas applied to the commissioner for the discharge of Thomas on these grounds: (1) No demand has been made by the foreign government for the surrender of the accused, so as to give the commissioner jurisdiction of the proceeding. (2) There is no existing convention for extradition between the kingdom of Bavaria and the United States. (3) The convention with Bavaria, of September, 1853, is annulled by the constitution of the German empire, adopted in 1871. (4) In accordance with such constitution, the kingdom of Bavaria, as an independent government, ceased to exist, and became a component part of the German empire. (5) The government of the United States has no power or authority to treat with the component part of any other independent government, but can only treat with such government as an entirety. (6) The complaint, upon its face, indicates the want of power of the kingdom of Bavaria, as an independent government, to demand the enforcement of any right under the convention of 1853, and shows the merging of the kingdom of Bavaria in the German empire. At that stage of the proceedings the counsel for the foreign government presented the said mandate to the commissioner. The application for the discharge of Thomas was then denied by the commissioner, and the proceedings were adjourned to the 1st of October, 1874.

On the 18th of September a writ of habeas corpus and a writ of certiorari were issued, both of them returnable before this court. The relator is now before this court under the former writ, and the proceedings and papers are before it under the latter writ. The discharge of the relator is asked on various grounds.

The first ground urged is, that, prior to the issuing of the warrant by the commissioner, no mandate had been issued, or authority given, by the government of the United States, on the application of the foreign government, for the entertaining of the complaint by the commissioner, or for the issuing of the warrant by him. Prior to the time when the case of In re Kaine, 14 How. [55 U. S.] 103, arose in the supreme court, in 1852, it had been the practice, in this district, for the federal magistrates who entertained complaints in cases of extradition, to do so without the prior presentation to them of any such mandate or instrument of authority, and such practice had been sanctioned by judicial decision. In the case of In re Kaine [Case No. 7,598], before this court, held by Judge Betts, the point was taken, on habeas corpus, that no warrant of arrest could issue, in an extradition case, unless it appeared that a requisition for such arrest had first been made on the government of the United States by the foreign government. In that case, the British consul had applied, in the first in-

stance, to the commissioner, for the warrant of arrest, and the government of the United States had given no instruction or request that the subject should be acted on by a judicial officer. The court held, that the treaty with Great Britain, for extradition, admitted of the interpretation, that the first application might be made, by complaint on oath, to a magistrate, without the intervention of either nation, and that it did not provide that a requisition for the arrest of a fugitive should be made by one government on the other. The language of the convention with Bavaria is the same as that of the treaty with Great Britain, of 1842 8 Stat. 576. Each contains a provision, that "the respective judges and other magistrates of the two governments shall have power, jurisdiction, and authority, upon complaint made under oath, to issue a warrant for the apprehension of the fugitive or person so charged, that he may be brought before such judges or other magistrates' respectively, to the end that the evidence of criminality may be heard and considered," and each contains a provision, that the respective countries shall, "upon mutual requisitions by them, or their ministers, officers, or authorities, respectively made," "deliver up to justice all persons who, being charged with" the enumerated crimes, committed within the jurisdiction of either party, shall seek an asylum, or shall be found, within the territories of the other. When the Case of Kaine was under consideration by the supreme court, that court consisted of eight judges. Four of them (Justices McLean, Wayne, Catron, and Grier) concurred in holding that, under the terms of the treaty with Great Britain and the act of congress of August 12, 1848 (9 Stat. 302), the judicial magistrates named in that act are required to issue warrants, and cause arrests to be made, at the instance of the foreign government, on proof of criminality, as in ordinary cases where crimes are committed within our own jurisdiction, and punishable by the laws of the United States, and without a previous mandate from the executive department. Mr. Justice Curtis expressed no opinion on the question. Chief Justice Taney and Justices Daniel and Nelson concurred in holding, that the judiciary possessed no jurisdiction to entertain proceedings under the treaty, for the apprehension and committal of the alleged fugitive, without a previous requisition, made under the authority of Great Britain, upon the president of the United States, and his authority obtained for that purpose. A majority of the court not concurring as to the interpretation to be given to the treaty and the act of 1848, the case came before Mr. Justice Nelson, at chambers.—Ex parte Kaine [Case No. 7,597],—who held, that the previous decision of this court, refusing to discharge the accused, did not relieve him from inquiring, on habeas corpus, into the legality of the imprisonment; that, as a majority of the supreme court had not concurred in deciding the case on the merits, and it had been dis-

missed without any decision on the merits, he was left to follow out his own convictions and conclusions, in finally disposing of it; that a requisition ought to have been made, in the first instance, upon the executive, and his authority obtained, in order to warrant the interposition of the judiciary; and that the accused must be discharged.

While Mr. Justice Nelson was still upon the bench of the supreme court, and was the presiding judge in the Second circuit, and in this court, the case of In re Henrich [Case No. 6,369], arose. In that case there was a previous mandate. But Judge Shipman, by whom, holding this court, the case was heard, made, with the concurrence of Mr. Justice Nelson and myself, suggestions concerning the proper practice to be pursued in extradition cases, one of which was as follows: "It would seem indispensable that a demand for the surrender of the fugitive should be first made upon the executive authorities of the government, and a mandate of the president be obtained, before the judiciary is called upon to act. See Mr. Justice Nelson's opinion, in Re Kaine [supra]. At all events, this would be the better practice, and one in keeping with the dignity to be observed between nations, in such delicate and important transactions."

In November, 1869, the case of In re Farez [Case No. 4,644] arose before this court. One of the warrants on which the accused was arrested and in custody had been issued without any previous mandate from the government. Mr. Justice Nelson was still the presiding judge of this circuit, and this court, held by myself, without discussing or deciding the point on its merits, remarked, citing the cases of Ex parte Kaine and In re Henrich: "It is the law of this circuit, that the judiciary possess no jurisdiction to entertain proceedings, under any treaty or convention between the United States and a foreign government, for the apprehension and committal of any alleged fugitive from justice, whose extradition is demanded by such foreign government, without a previous requisition having been made, under the authority of the foreign government, upon the government of the United States, and the authority of the latter government obtained, to apprehend such fugitive."

When the case of In re Macdonnell [Case No. 8,771], came before this court, held by Judge Woodruff, in April, 1873, Mr. Justice Nelson had ceased to be the presiding judge of this circuit, having resigned his office as an associate justice of the supreme court. In the Case of Macdonnell, there was a previous mandate, but it was objected that the complaint on which the warrant was issued did not show that a mandate had been issued, although the warrant showed that fact, and it was further objected that the mandate was not in proper form. The question of the necessity of such mandate, to confer jurisdiction on the magistrate to entertain proceed-

ings for the apprehension of the alleged fugitive, was argued by counsel. Judge Woodruff, in his decision, narrates the proceedings in the Case of Kaine, both before the supreme court and before Mr. Justice Nelson, and states, that the practice before commissioners, in regard to the necessity of a prior mandate, had, down to the decision of Mr. Justice Nelson in the Case of Kaine, conformed to the views of the four judges of the supreme court in which Mr. Justice Nelson did not concur, and that what is said on the point in the decisions in the Cases of Henrich and of Farez is placed distinctly on the authority of Judge Nelson's decision in the Case of Kaine. But, although the language of the discussion indicates that Judge Woodruff doubted the correctness of that decision, he says that it is not necessary for him to decide to what extent he is bound by the decision made, or the opinion declared, in Kaine's Case, nor that he should express an opinion upon the question itself, for the reason, not only that the mandate of the president was procured, and delivered to the commissioner, before he acted in the matter at all, but, also, because, in his judgment, the objections made to the actual proceedings had by or before the commissioner might be considered and decided upon a concession, for all the purposes of the case, that such mandate, or other authorization by the president, was necessary.

In the case of Ex parte Ross [Case No. 12,069], before the district judge for Ohio, in 1869, an objection that the warrant of arrest could not be issued until after the action of the government, authorizing the magistrate to act and cause the accused to be brought before him, was overruled. The point has recently been under consideration by Judge Lowell, of the Massachusetts district, in the case of In re Kelley [Id. 7,655], who declined to adopt the practice of requiring a previous executive mandate. In his decision he says: "Considering the strong reasons, as well as the great preponderance of authority, against the practice—a preponderance which I find in the treaty itself, in the statute, and in the opinions of the greater number of the judges who have considered the question—and further, that the reasons in its favor have lost their force in the present state of practice in the state department, I feel constrained to refuse to establish it in this district." The practice in the state department, thus referred to, is the practice of exercising the judgment of the executive upon the case, after the examining magistrate has certified the evidence and proceedings to the secretary of state, as illustrated in the refusal of the executive to issue a warrant for the surrender of one Stupp or Vogt,—In re Stupp [Id. 13,562],—after he had been committed for extradition by a magistrate, and his release had been refused, on habeas corpus, by a judicial tribunal.

I have thus adverted to all the reported decisions on the point in issue, for the purpose of showing to what extent they uphold the necessity of a prior mandate, and what is the extent of the authority for the practice which has been held to be the law of this circuit, and which had been followed therein, since the decision of Mr. Justice Nelson in the Case of Kaine. Without recapitulating the grounds taken in the various opinions referred to, as reasons for holding that a prior mandate is not made a prerequisite, by any act of congress, to the issuing, by a magistrate, of a warrant for the arrest of a fugitive whose extradition is sought, and is not such a prerequisite, except where made so by the treaty, I am prepared to say, that, so far as my own action is concerned, it is not, for the purposes of the present case, or of future like cases, (that is, cases where the treaty does not require a previous mandate,) to be regarded as the law, that the issuing of an executive mandate, in a case of extradition, is a prerequisite to the entertaining of proceedings, and the issuing of a warrant of arrest, by a magistrate. I am further authorized to say, that I have consulted with the circuit judge, (Judge Woodruff,) on the subject, and submitted these views to him, and he concurs in them, as an expression, also, of his own views.

It is further contended, on the part of Thomas, that the convention with Bavaria was abrogated by the absorption of Bavaria into the German empire. An examination of the provisions of the constitution of the German empire does not disclose anything which indicates that then existing treaties between the several states composing the confederation called the German empire and foreign countries were annulled, or to be considered as abrogated. Indeed, it is difficult to see how such a treaty as that between Bavaria and the United States can be abrogated by the action of Bavaria alone, without the consent of the United States. Where a treaty is violated by one of the contracting parties, it rests alone with the injured party to pronounce it broken, the treaty being, in such case, not absolutely void, but voidable, at the election of the injured party, who may waive or remit the infraction committed, or may demand a just satisfaction, the treaty remaining obligatory if he chooses not to come to a rupture. 1 Kent, Comm. 174. In the present case, the mandate issued by the government of the United States shows that the convention in question is regarded as in force both by the United States and by the German empire, represented by its envoy, and by Bavaria, represented by the same envoy. The application of the foreign government was made through the proper diplomatic representative of the German empire and of Bavaria, and the complaint before the commissioner was made by the proper consular authority representing the German empire and also representing Bavaria. It is also objected, that the complaint is insufficient. This objection is not tenable.

It is not a necessary preliminary step to an investigation here, under an extradition treaty, that a warrant of arrest should have been issued, or proceedings had, against the accused, in the foreign jurisdiction. The point taken to that purport is, therefore, overruled. The writs are discharged, and the relator is remanded to the custody of the marshal.