(C. D. 585)

ALFRED BAER *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 22, 1942)

*Eugene R. Pickrell,* (*Eugene A. Chase* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue,* special attorney),
for the defendant.

Before CLINE and KEEFE, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed by the collector on certain hops imported on October 4, 1939, from Yugoslavia. Duty was assessed at the rate of 24 cents per pound under paragraph 780 of the Tariff Act of 1930 and the plaintiff claims that the merchandise is subject to duty at only 18 cents per pound by virtue of the trade agreement with Czechoslovakia (53 Stat. 2293, 2324, T. D. 49458) proclaimed by the President on March 15, 1938.

This case presents a question of law as the facts are not disputed. On March 23, 1939 (53 Stat. 2530, T. D. 49824), the President by proclamation terminated the rates of duty previously proclaimed pursuant to the trade agreement with Czechoslovakia and directed that the rates of duty contained in the trade agreement with Czecho-

slovakia shall not apply to merchandise entered for consumption or withdrawn from warehouse for consumption on or after April 22, 1939.

The plaintiff claims in his protest that "the Proclamation of the President of the United States, dated March 23, 1939 (T. D. 49824), is *ultra vires*, illegal, null, and void, inasmuch as due notice was not given to the Czechoslovakian Republic in accordance with either subsection 2 (b) of the amendment to the Tariff Act of 1930, as approved June 12, 1934, or the provisions of the Reciprocal Trade Agreement entered into by the United States and the Czechoslovakian Republic, dated March 15, 1938 and published as T. D. 49458."

The proclamation of the President which the plaintiff claims is void (T. D. 49824), reads as follows:

WHEREAS it is provided in the Tariff Act of 1930 of the Congress of the United States of America, as amended by the Act of June 12, 1934, entitled "AN ACT To amend the Tariff Act of 1930" (48 Stat. 943), which amending Act was extended by Joint Resolution of Congress, approved March 1, 1937 (50 Stat. 24), as follows:

Sec. 350. (a) For the purpose of expanding foreign markets for the products of the United States (as a means of assisting in the present emergency in restoring the American standard of living, in overcoming domestic unemployment and the present economic depression, in increasing the purchasing power of the American public, and in establishing and maintaining a better relationship among various branches of American agriculture, industry, mining, and commerce) by regulating the admission of foreign goods into the United States in accordance with the characteristics and needs of various branches of American production so that foreign markets will be made available to those branches of American production which require and are capable of developing such outlets by affording corresponding market opportunities for foreign products in the United States, the President, whenever he finds as a fact that any existing duties or other import restrictions of the United States or any foreign country are unduly burdening and restricting the foreign trade of the United States and that the purpose above declared will be promoted by the means hereinafter specified, is authorized from time to time—

(1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

(2) To proclaim such modifications of existing duties and other import restrictions, or such additional import restrictions, or such continuance, and for such minimum periods, of existing customs or excise treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder. No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists. The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly: *Provided,* That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part.

WHEREAS, pursuant to the said Tariff Act of 1930, as amended, I entered into a foreign Trade Agreement on March 7, 1938, with the President of the Czecho-

slovak Republic, which Agreement was amended by a Protocol of Amendment signed on April 15, 1938;

WHEREAS, by my Proclamations of March 15, 1938, and April 15, 1938, I did make public the said Trade Agreement, as amended by the said Protocol of Amendment, in order that the said Agreement as amended should be observed and fulfilled with good faith by the United States of America and the citizens thereof on and after April 16, 1938;

WHEREAS the occupation of the Czechoslovak Provinces of Bohemia, Moravia, and Slovakia by armed forces of Germany, and of the Province of Ruthenia by armed forces of Hungary and the assumption of de facto administrative control over these Provinces by Germany and Hungary renders impossible the present fulfillment by the Czechoslovak Republic of its obligations under the said Agreement:

WHEREAS this condition will obtain so long as such occupation and administration continue;

NOW, THEREFORE, be it known that I, Franklin D. Roosevelt, President of the United States of America, acting under the authority conferred by the said Tariff Act of 1930, as amended by the said Act of June 12, 1934, as extended by the said Joint Resolution of March 1, 1937, do hereby proclaim that my Proclamations of March 15, 1938, and April 15, 1938, shall be terminated in whole on the thirtieth day after the date of this my Proclamation.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this twenty-third day of March in the year of our Lord one thousand nine hundred and thirty-nine and of the Independence of the United States of America the one hundred and sixty-third.

The merchandise in this case was imported from Yugoslavia, not from Czechoslovakia, but the generalization clause in section 350 (a), quoted in the above proclamation, reading—

The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly: * * *

grants to products of other countries selected by the President the advantage of the same rates of duty applicable to products of the country with which a trade agreement is made. A letter from the President to the Secretary of the Treasury, quoted in T. D. 49458, names Yugoslavia as one of the countries entitled to the benefits of the rates of duty applicable to Czechoslovakia in the trade agreement.

Counsel for the plaintiff claims in his brief that the alleged illegal act of the President in terminating the trade agreement with Czechoslovakia without due notice deprived his client of the privileges of the rates of duty proclaimed by the President as applicable to products of Czechoslovakia; that the trade agreement herein involved is a treaty; and that the President could not legally abrogate the same without giving 6 months' notice to the government of Czechoslovakia of his intent. Counsel relies upon the following provision in subsection 2 (b) of section 350 (a) of the act of June 12, 1934, amending the

Tariff Act of 1930, and the statement in article XIX of the trade agreement. Those provisions read as follows:

Sec. 350 (a), subsection 2 (b). Every foreign trade agreement concluded pursuant to this Act shall be subject to termination, upon due notice to the foreign government concerned, at the end of not more than three years from the date on which the agreement comes into force, and, if not then terminated, shall be subject to termination thereafter upon not more than six months' notice.

Article XIX of the Trade Agreement. (T. D. 49458) * * * The present Agreement shall remain in force, subject to the provisions of Article VII, Article VIII, Article XII, Article XVII, and numbered paragraph 14 of the Protocol, until April 15, 1939. Unless at least six months before April 15, 1939, the Government of either country shall have given notice of termination to the other Government, the Agreement shall continue in force thereafter, subject to the provisions of Article VII, Article VIII, Article XII, Article XVII, and numbered paragraph 14 of the Protocol, until six months from the day on which the Government of either country shall have given notice of termination to the other Government.

Articles VII, VIII, XII, XVII and paragraph 14 of the Protocol not herein involved, state instances under which the trade agreement may be terminated upon 30 days' notice.

A review of the excerpts quoted above from section 350 (a) does not indicate that Congress placed a limitation of time upon which a trade agreement may be terminated before the expiration of 3 years. It states that "at the end of not more than three years from the date of the agreement." As to the time after 3 years from the date of the agreement, the statute states that it "shall be subject to termination thereafter upon not more than six months' notice." It is clear that the statute does not provide that 6-months' notice must be given before termination of an agreement.

Article XIX of the trade agreement provides that the agreement shall be effective until April 15, 1939 unless 6 months before that time the government of either country shall have given notice of the intended termination to the other government, but after April 15, 1939, the agreement shall remain in force until 6 months from the day on which the government of either country shall have given notice of termination to the other government.

Counsel for the plaintiff urges in his brief that the trade agreement herein involved is a treaty, citing *B. Altman & Co.* v. *United States*, 224 U. S. 583, 56 L. Ed. 894, and that the invasion by Germany of territory in Czechoslovakia did not annul that treaty, citing *In re Thomas*, 12 Blatchf. 370, 23 Fed. Cas. 927, and *Terlinden* v. *Ames*, 184 U. S. 270, 46 L. Ed. 534. Counsel for the plaintiff refers also to numerous instances cited in "United States, Foreign Relations," "Moore's International Law Digest," etc., in support of his contention that a treaty is not automatically terminated by the extinction of

one of the parties and that a treaty may be terminated only in accordance with its provisions or by consent of both parties.

Counsel for the defendant contends in his brief that "a private litigant in a court of the United States has no standing to assert alleged international rights of the Republic of Czechoslovakia (which alleged rights, it may be noted, have not been asserted by any authorized representative of Czechoslovakia) unless the laws of the United States make such an issue pertinent to a determination of the rights of such a litigant"; that section 350 (a) authorizes the President (1) to enter into international agreements and (2) to proclaim for purposes of domestic law modifications of existing duties; that the only rights which plaintiff is entitled to assert are such rights as he may have as a result of action taken by the President pursuant to the delegated authority to proclaim modifications of existing duties; that, since that modification was terminated by the subsequent proclamation of March 23, 1939, plaintiff's case fails if the subsequent proclamation was valid, irrespective of the status of the agreement with Czechoslovakia. The defendant refers to the following excerpt from section 350 (a) as authority for the President to terminate an earlier proclamation:

The President may at any time terminate any such proclamation in whole or in part.

Counsel for the defendant quotes the following excerpt from the decision in *United States* v. *George S. Bush & Co., Inc.*, 310 U. S. 371, 380, in support of his contention that the court cannot inquire into the discretionary acts of the President:

It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review.

That case involved the authority of the President to proclaim an increase of duties on merchandise under the flexible tariff provisions, section 336 of the Tariff Act of 1930.

In *United States* v. *Friedlaender & Co., Inc.*, 27 C. C. P. A. (Customs) 297, C. A. D. 104, the court held that merchandise manufactured in Czechoslovakia before the country was invaded by Germany and shipped afterwards should be marked so as to indicate that Germany was the country of origin.

We are constrained to agree with the contention of the defendant in this case. The question relating to the act of the President in entering into or terminating a trade agreement is political and not subject to review by the courts. In *Gerhard Terlinden* v. *John C. Ames*, 184 U. S. 270, 288, 46 L. Ed. 534, 545, which case involved the

extradition of a criminal to Germany under the authority of a treaty with Prussia entered into with Prussia before that country became a part of the German Empire, the court said:

We concur in the view that the question whether power remains in a foreign State to carry out its treaty obligations is in its nature political and not judicial, and that the courts ought not to interfere with the conclusions of the political department in that regard.

The plaintiff in this case was granted the benefits of the lower rates of duty on hops from Yugoslavia by the act of the President in extending the rates of duty in the trade agreement to products of Yugoslavia and not by the trade agreement with Czechoslovakia itself. section 350 (a) (2) authorizes the President to terminate a proclamation under said law in whole or in part at any time and we hold that the President was authorized by statute to issue his proclamation of March 23, 1939 (T. D. 49824), terminating the rates of duty previously proclaimed on March 15, 1938 (T. D. 49458), for the products of the countries named therein pursuant to the provisions of section 350 (a) and the trade agreement with Czechoslovakia. The protest is overruled. Judgment will be entered in favor of the defendant.