(C. D. 915)

Levine Bros. Glass, Inc. *v.* United States

United States Customs Court, First Division

(Decided April 6, 1945)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*John J. McDermott, Charles J. Miville,* and *Joseph B. Brady,* special attorneys), for the defendant.

Before OLIVER and COLE, Judges

OLIVER, Presiding Judge: This is an action brought to recover duties claimed to have been illegally exacted on drawn window glass, known as cylinder, crown, or sheet glass, imported from Belgium and entered at the port of New York. Duty was assessed at the rate of $2^{5}\%_{4}$ cents per pound under paragraph 219 of the Tariff Act of 1930, as modified by Presidential proclamation issued December 2, 1931 (T. D. 45313), under the authority of section 336 of the Tariff Act of 1930, this being the so-called flexible tariff provision.

Plaintiff by its protest claims duty should have been assessed at the rate of $1^{6}\%_{4}$ cents per pound, the rate provided in the trade agreement with Czechoslovakia, which became effective April 16, 1938, by virtue of Presidential proclamations dated March 15, 1938 (T. D. 49458) and April 15, 1938 (T. D. 49512). The rates provided for in said trade agreement continued in full force and effect until terminated by Presidential proclamation dated March 23, 1939 (T. D. 49824), which terminated the aforementioned proclamations of March 15 and April 15, 1938, on the thirtieth day after the date of this proclamation, or April 22, 1939.

The merchandise under consideration (sheet glass) arrived at the port of New York with intention to unlade on April 19, 1939. On

April 22, 1939, the importer filed with the proper customs officials at the port of New York, a consumption entry for this merchandise together with a check for estimated duties and all necessary papers required to be filed with a consumption entry under articles 310–316 of the Customs Regulations of 1937.

There is no dispute as to the facts and the sole question before us for decision is whether this merchandise is subject to the duties in effect on the date of importation, that is, April 19, 1939 (the date the vessel arrived at the port of entry with intent to unlade), or the rate in effect at the time entry was made, which was April 22, 1939. If the former date is to control, the importer's protest must be sustained, and he should receive the benefit of the lower rate of duty provided for in the Czechoslovakian Trade Agreement. If the date of entry is controlling, the rate of duty provided for by paragraph 219 of the Tariff Act of 1930 must control.

In publishing the Presidential proclamation of March 23, 1939, terminating the rates of duty set forth in the Czechoslovakian Trade Agreement, the Commissioner of Customs issued a notice to all collectors and others concerned, dated March 24, 1939 (T. D. 49824), stating in part "Such rates will not apply to merchandise entered for consumption or withdrawn from warehouse for consumption on or after April 22, 1939."

In addition to its claim that the rates provided for in the trade agreement should apply as the merchandise was imported prior to the effective date of the cancellation of the rates provided for in the trade agreement, plaintiff contends "that the attempted termination of the Agreement with Czechoslovakia by Presidential Proclamation No. 2326, T. D. 49824, is *ultra vires*, illegal, null and void because due notice was not given to the Czechoslovak Republic in accordance with either the statutes or the terms of the Agreement."

The Government contends that the trade agreement with Czechoslovakia, while modifying certain rates of duty provided for in the Tariff Act of 1930, did not modify or change the administrative provisions of that act and that upon the termination of the rates of duty provided for thereunder, all the provisions of the Tariff Act of 1930 as originally enacted were restored in full force and effect, and that the date of entry for consumption and not the date of importation controls the rate of duty to be imposed upon the imported merchandise. It is further contended that as the Trade Agreements Act of June 12, 1934 (T. D. 47117; section 350 of the Tariff Act of 1930), specifically empowers the President to "at any time terminate any such proclamation in whole or in part," the proclamation of the President terminating such rates of duty was legal and did not require 6 months' notice prescribed for the formal termination of the trade agreement.

It is well settled that merchandise is deemed to be imported into the United States, in the ordinary meaning of that term, when it has arrived at a port of entry with intent to unlade.

*Minneapolis Cold Storage Co.* v. *United States*, 9 Ct. Cust. Appls. 225, T. D. 38200; *Sterling Bronze Co.* v. *United States*, 12 Ct. Cust. Appls. 338, T. D. 40487; *Kee Co.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943; *East Asiatic Co., Inc.* v. *United States*, 27 C. C. P. A. 364, C. A. D. 112.

It is equally well established by the decisions of our courts that imported goods are subject to the rates of duty in effect at the time of importation unless the Congress has clearly manifested a contrary intent.

*United States* v. *Field*, 14 Ct. Cust. Appls. 406, T. D. 42052; *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, T. D. 37980; *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266, T. D. 40270; *Stone & Downer* v. *United States*, 19 C. C. P. A. 259, T. D. 43388; *Diana* v. *United States*, 12 Ct. Cust. Appls. 290, T. D..40295.

The Tariff Act of 1930 specifically provides that merchandise—

* * * previously imported, for which no entry has been made, and all * * * merchandise previously entered without payment of duty and under bond for warehousing * * * for which no permit of delivery * * * has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof (sec. 315).

Similar provisions will also be found in previous tariff acts, such as section 319 of the Tariff Act of 1922 and paragraph Q of the Tariff Act of 1913. Congress has thus clearly indicated its intent that when a new tariff act has been enacted, merchandise must be entered for consumption prior to the effective date of such new act to secure the benefits of the act in effect when the goods were imported. In the case now under consideration, we are confronted with a different situation as no new tariff act is involved.

Section 350 (a) of the Tariff Act of 1930, approved June 12, 1934 (48 Stat. 943; T. D. 47117), being the so-called Trade Agreements Act of 1934, and which was duly extended by Joint Resolution of March 1, 1937 (50 Stat. 24), and was in full force and effect on the dates involved in the present controversy, empowered the President:

(1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

(2) To proclaim such modifications of existing duties as are required or appropriate to carry out any trade agreement entered into hereunder.

The trade agreement with Czechoslovakia (T. D. 49458), in article II thereof, provides:

Articles the growth, produce, or manufacture of the Czechoslovak Republic, enumerated and described in Schedule II annexed to this Agreement and made a part thereof, shall, *on their importation into the United States of America,* be

exempt from ordinary customs duties in excess of those set forth and provided for in the said schedule. [Italics supplied.]

In publishing the President's proclamation of the Czechoslovakian Trade Agreement (T. D. 49458), the Commissioner of Customs directed that:

The new rates of duty * * * will apply to articles * * * which are entered for consumption or withdrawn from warehouse for consumption on or after April 16, 1938.

This particular trade agreement did not include within its provisions a so-called "savings clause" similar to section 315 of the Tariff Act of 1930, providing that merchandise imported before its effective date but entered for consumption subsequent thereto, would be subject to the rates contained in such trade agreement. It seems that many other trade agreements contain such a "savings clause" and plaintiff contends that the absence of such a clause, coupled with the provision in Article II "on their importation into the United States of America," indicates an intent to have the date of importation rather than the date of entry control.

The first question presented for our consideration is whether the use of the words "on their importation into the United States of America" in article II of the said trade agreement was the expression of an intent as to the *time* when the rates of duty would accrue or whether these words were used to describe the *status* of merchandise as coming into the United States from a foreign country.

The Tariff Act of 1913 contained, in its preamble, the provision:

That on and after the day following the passage of this Act, except as otherwise specially provided for in this Act, there shall be levied, collected, and paid upon all articles *when imported from any foreign country into the United States,* * * * the rates of duty which are by the schedules and paragraphs of the dutiable list of this section prescribed * * *. [Italics supplied.]

The Tariff Act of 1930 contains a similar provision in section 1 thereof.

Paragraph Q of section IV of the act of 1913, which was reenacted as section 315 of the Tariff Act of 1930, makes the rates of duty in such act applicable to all—

* * * merchandise previously imported, for which no entry has been made and all * * * merchandise previously entered without payment of duty and under bond for warehousing * * *.

The act of September 8, 1916, entitled "An Act To increase the revenue, and for other purposes," Title V, Dyestuffs (39 Stat. 793), reads as follows:

Section 500. That on and after the day following the passage of this Act, except as otherwise specially provided for in this title, there shall be levied, collected and paid upon the articles named in this section *when imported from any foreign country into the United States,* or into any of its possessions, * * * the rates of duties which are prescribed in this title, namely: * * * [Italics supplied.]

In *Vandegrift & Co.* v. *United States*, 9 Ct. Cust. Appls. 112, T. D. 37978, in considering the issue involving the applicability of paragraph Q of the Tariff Act of 1913 to the above amendment to the tariff law, and with particular reference to the effect to be given the words above referred to, the court said (p. 121):

Is the contention that this act by its term shows an intention to segregate goods already imported and in warehouse from those which shall be subsequently imported borne out by the terms of the statute? This seems to be solved by determining the sense in which the words "when imported from any foreign country," etc., are employed in section 500. We think that these words are employed with the purpose of indicating the origin of the goods, as from a foreign country, rather than to indicate the time of their importation. Goods may be deemed imported when they are brought within any port of the United States, but the term was obviously not so employed here, for duties are not at that moment and concurrently with their being thus imported, collected. Something more must be done. An entry and appraisement must be made before collection can be had. The word "when" as used in this paragraph should be read as meaning "which are," and as having no purpose to change the time or condition under which a collection of revenue is to be had.

That this is the sense in which these words are thus employed is apparent when we turn to the act of 1913 and note that precisely the same use is made of the words "when imported from any foreign country" in the enacting clause of that act. Yet that this provision was not intended to limit the levying of the tax under the act of 1913 to such goods as thereafter were imported was manifest from the fact that subsequent provisions are made that include within its terms all goods previously imported and upon which duty had not been assessed. Unless, therefore, there was palpable conflict between the two provisions, paragraph Q of section 4, and the enacting clause of the act of 1913, the words "when imported" must have been used in the sense in which we have indicated above.

We can see no difference in intent between the words "when imported from any foreign country into the United States," as used in the Revenue Act of 1916, and the words "on their importation into the United States of America," as used in the trade agreement with Czechoslovakia. We feel that we are bound by the construction of our appellate court in the *Vandegrift* case, *supra*, and that these words as used in the trade agreement are descriptive of the merchandise and are not intended to indicate the time when the amended rates of duty take effect. The fact that the trade agreement does not contain the so-called "savings clause" above referred to, whereas others of the trade agreements did contain such a clause, is, in our opinion, not significant and does not indicate an intent to give to the above words a meaning different from that expressed by the appellate court in the *Vandegrift* case.

The contentions of the parties there, were substantially the same as in the case now before us. As the court stated (p. 115), the importer there contended—

* * * that the act of September 8, 1916, is an independent act which must be read by itself uninfluenced by, without advertance to, or any consideration of paragraph Q of section IV of the said tariff act of 1913.

The Government contended—

\* \* \* that the two acts must be read together as a single act in pari materia,. that paragraph Q is not repealed by nor inconsistent with any of the provisions of the act of September 8, 1916, and, therefore, should be construed as if it were a part of the latter act.

We find, following the reasoning of the court in the *Vandegrift* case, that the Tariff Act of 1930 and the trade agreement with Czechoslovakia (enacted under the authority of section 350 of the tariff act) are in *pari materia* and must be read together as the court said (p. 115):

\* \* \*. This is particularly true as to revenue acts. Every provision of each act which can be given some force and effect consistent with the provisions of the other must be so construed. \* \* \* That revenue laws, as modified from time to time, are always construed together has uniformly been held by the courts.

In the present case we also find that there is nothing in section 315 inconsistent with any of the provisions of the trade agreement. Even had the provisions of section 315 been included in the trade agreement, the other provisions of the agreement would clearly and consistently be enforceable in the mode prescribed by section 315, and, as the court said in the *Vandegrift* case (p. 118):

\* \* \* that is the test which has been laid down by the Supreme Court in almost precisely the same legal conspectus. Thus in Ring et al. *v.* Maxwell (17 How., 58 U. S., 146), the precise question was decided. \* \* \*.

Under the authority of the *Vandegrift* case, we find that section 315 of the Tariff Act of 1930 is not inconsistent with or repugnant to any of the provisions of the said trade agreement with Czechoslovakia and, "being a rule for the guidance of customs officers," should be read in connection therewith.

In connection with plaintiff's further contention—

\* \* \* that the attempted termination of the agreement with Czechoslovakia by Presidential Proclamation No. 2326, T. D. 49824, is *ultra vires* illegal, null, and void because due notice was not given to the Czechoslovak Republic in accordance with either the statutes or the terms of the Agreement \* \* \*.

our attention is directed to the argument presented in *Alfred Baer* v. *United States*, Protest 37980–K/13170, which was then pending in the Third Division of this court. Since the present case was submitted, that case has been decided (C. D. 585). The court (Judge Cline) there said (8 Cust. Ct. 109):

We are constrained to agree with the contention of the defendant in this case. The question relating to the act of the President in entering into or terminating a. trade agreement is political and not subject to review by the courts. \* \* \*.

We adopt and apply the principle above stated and are of opinion that the act of the President in terminating his proclamations of March 15 and April 15, 1938, on 30 days' notice is not subject to review by this court.

The merchandise here before us not having been entered for consumption prior to the date of termination of the rates of duty provided for in the trade agreement with Czechoslovakia, plaintiff's protest is overruled.