**STAR INDUSTRIES, INC.**

v.

**UNITED STATES.**

**C.D. 4155; Protest No. 66/76209–19686–64.**

United States Customs Court,
Third Division.

Dec. 23, 1970.

Barnes, Richardson & Colburn, New York City (J. Bradley Colburn, James F. Donnelly, E. Thomas Honey, and Norman C. Schwartz, New York City, of counsel) for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen., (Velta A. Melnbrencis, New York City, trial atty.), for defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges.

RICHARDSON, Judge:

The merchandise of this protest consists of brandy in ⅘ quart bottles valued at over $9.00 per proof gallon which was imported at the port of New York from Spain and withdrawn from warehouse for consumption after January 7, 1964. The brandy was liquidated pursuant to item 945.16 of the Tariff Schedules of the United States at the duty rate of $5.00 per proof gallon which is the statutory rate therefor carried over into the Appendix of the Tariff Schedules from paragraph 802 of the Tariff Act of 1930. And the importer claims in its protest that the brandy is properly dutiable under item 168.20 of the tariff schedules at $1.25 per gallon—the trade agreement rate provided for under rate column 1, and also that the assessment of duties herein is illegal and void.

Item 945.16, which was added to the Appendix to the Tariff Schedules by Presidential Proclamation No. 3564, 98 Treas.Dec. 711 (T.D. 56072) dated December 4, 1963, reads as follows:

APPENDIX TO THE TARIFF SCHEDULES
\* \* \* \* \*
PART 2. TEMPORARY MODIFICATIONS PROCLAIMED PURSUANT TO TRADE-AGREEMENTS LEGISLATION
\* \* \* \* \*
Subpart B. Temporary Modifications Pursuant to Section 252 of the Trade Expansion Act of 1962
\* \* \* \* \*
945.16 Brandy, valued over $9.00 per gallon (provided for in items 168.20 and 168.22) [column 1] .........$5. per gal.

I. That agreement of October 30, 1947, has been proclaimed by Proclamation 2761A of December 16, 1947 (61 Stat. (pt. 2)

and item 168.20 of the tariff schedules reads as follows:

TARIFF SCHEDULES OF THE UNITED STATES
\* \* \* \* \*
SCHEDULE 1.—ANIMAL AND VEGETABLE PRODUCTS
PART 12. BEVERAGES
\* \* \* \* \*
Subpart D. Spirits, Spirituous Beverages and Beverage Preparations
\* \* \* \* \*
Brandy:
168.20 In containers each holding not over 1 gallon [column 1].. $1.25 per gal.

And Presidential Proclamation No. 3564 reads as follows:

By The President of the United States of America
A Proclamation

Whereas the European Economic Community maintains unreasonable import restrictions upon imports of poultry from the United States;

Whereas such unreasonable import restrictions directly and substantially burden United States commerce;

Whereas products of the European Economic Community receive benefits of trade agreement concessions made by the United States;

Whereas it is consistent with the purposes expressed in Section 102 of the Trade Expansion Act of 1962 (19 U.S.C. 1801) for the United States to suspend the application of the benefits of certain of those trade agreement concessions;

Whereas, having due regard for the international obligations of the United States, particularly paragraph 3 of Article XXVIII of the General Agreement on Tariffs and Trade[1] requiring any suspension of trade agreement concessions to be made on a most-favored-nation basis, I am taking steps to suspend, on a most-favored-nation basis, certain trade agreement concessions in the United States schedules to that Agreement; and

Whereas rates of duty suspended by this proclamation will not be required

1103), which proclamation has been supplemented by subsequent proclamations.

or appropriate to carry out any trade agreement on and after January 7, 1964:

Now, Therefore, I, Lyndon B. Johnson, President of the United States of America, acting under the authority vested in me by the Constitution and statutes of the United States of America, including Section 252(c) of the Trade Expansion Act of 1962 (19 U.S.C. 1882(c) and Section 350(a) (6) of the Tariff Act of 1930), as amended (19 U.S.C. 1351(a) (6)), and in order to suspend the application of the benefits of certain trade agreement concessions, do hereby proclaim (until such time as the President of the United States of America otherwise proclaims)

—

(1) the termination of that part of any prior proclamation which proclaims rates of duty inconsistent with those provided for in the amendment made by paragraph (2) of this proclamation; and

(2) the amendment of the Tariff Schedules of the United States (28 F.R. 8599, as corrected, 28 F.R. 9131) by inserting under the heading "Subpart B" of Part 2 of the Appendix thereto the following:

| Item | Article | Rates of Duty 1 | 2 |
|------|---------|------|---|
| * | *  *  * | * | * |
| 945.16 | Brandy, valued over $9.00 per gallon (provided for in items 168.20 and 168.22) | $5 per gal | No change |
| * | *  *  * | * | * |

The rates provided for in the amendment made by paragraph (2) of this proclamation shall be effective as to all articles entered, or withdrawn from warehouse, for consumption on and after January 7, 1964.

In witness whereof, I have hereunto set my hand and caused the Seal of the United States of America to be affixed.

Done at the City of Washington this fourth day of December in the year of our

Lord nineteen hundred and sixty-three, and of the Independence of the United States of America the one hundred and eighty-eighth.

[Seal]

Lyndon B. Johnson

By the President:
   Dean Rusk,
      Secretary of State

———

The parties are in agreement concerning the essential facts of this controversy, having entered into a stipulation which is part of the record herein along with the official papers. In evidence perforce of the stipulation as exhibit 1 is a true copy of the said Presidential Proclamation No. 3564 hereinbefore set out in pertinent part, and as exhibit 2 a notice of public hearing which preceded the issuance of said proclamation. Among other things, the parties agree that the statutory duty rate on brandy, hereinbefore referred to, was reduced from time to time by various trade agreements proclaimed under the authority of Section 350 of the Tariff Act of 1930, as amended (19 U.S.C.A., Section 1351), and that for the involved brandy the trade agreement rate in effect as of August 30, 1963 was $1.25 per gallon in containers each holding not over one gallon.

No question is raised herein respecting compliance with the procedural requirements preceding the issuance of Presidential Proclamation No. 3564, or as to the constitutionality of the Trade Expansion Act of 1962. Plaintiff contends that Proclamation No. 3564 is illegal and void because it did not comply with the requirements of Section 252 (c) of the Trade Expansion Act of 1962 (19 U.S.C.A., Section 1882(c)) and purported to increase the rate of duty on brandy, valued at over $9 per gallon, from all countries, and also purported to terminate that part of any prior proclamation which proclaimed rates of duty inconsistent with those proclaimed in Proclamation No. 3564. Defendant contends that Proclamation No. 3564 is valid because the President had statutory power to terminate a prior proclamation in whole or in part at any time,

and because the President's authority under section 1882(c) is not limited to action against an offending country or instrumentality.

Proclamation No. 3564 refers, among other things, to Section 1882(c) and to Section 350(a) (6) of the Tariff Act of 1930, as amended (19 U.S.C.A., Section 1351(a) (6)), in that order, as the specific statutory authority for the action undertaken therein by the President to suspend application of the trade agreement concessions complained about here by plaintiff. Section 1882(c) reads:

(c) Whenever a foreign country or instrumentality, the products of which receive benefits of trade agreement concessions made by the United States, maintains unreasonable import restrictions which either directly or indirectly substantially burden United States commerce, the President may, to the extent that such action is consistent with the purposes of section 1801 of this title, and having due regard for the international obligations of the United States—

(1) suspend, withdraw, or prevent the application of benefits of trade agreement concessions to products of such country or instrumentality, or

(2) refrain from proclaiming benefits of trade agreement concessions to carry out a trade agreement with such country or instrumentality.

Section 1801 (19 U.S.C.A., Section 1801), referred to in section 1882(c), reads:

The purposes of this chapter are, through trade agreements affording mutual trade benefits—

(1) to stimulate the economic growth of the United States and maintain and enlarge foreign markets for the products of United States agriculture, industry, mining, and commerce;

(2) to strengthen economic relations with foreign countries

through the development of open and nondiscriminatory trading in the free world; and

(3) to prevent Communist economic penetration.

And section 1351(a) (6) reads:

(6) The President may at any time terminate, in whole or in part, any proclamation made pursuant to this section.

In addition to the foregoing statutes, Proclamation No. 3564 also calls attention in its fifth recital to paragraph 3 of Article XXVIII of the General Agreement on Tariffs and Trade (GATT) as influencing the determination of the President to suspend on a most favored nation basis certain trade agreement concessions in the United States schedules to that agreement. Paragraph 3 of Article XXVIII of GATT as amended by the Geneva Protocol of Amendment (8 UST 1790–1791) reads:

*Modification of Schedules*

\* \* \* \* \* \*

3.(a) If agreement [to modify or withdraw concessions by negotiation] between the contracting parties primarily concerned cannot be reached before 1 January 1958 or before the expiration of a period envisaged in paragraph 1 of this Article, the contracting party which proposes to modify or withdraw the concession shall, nevertheless, be free to do so and if such action is taken any contracting party with which such concession was initially negotiated, any contracting party determined under paragraph 1 to have a principal supplying interest and any contracting party determined under paragraph 1 to have a substantial interest shall then be free not later than six months after such action is taken, to withdraw, upon the expiration of thirty days from the day on which written notice of such withdrawal is received by the CONTRACTING PARTIES, substantially equivalent concessions initially negotiated with the applicant contracting party.

(b) If agreement between the contracting parties primarily concerned is reached but any other contracting party determined under paragraph 1 of this Article to have a substantial interest is not satisfied, such other contracting party shall be free, not later than six months after action under such agreement is taken, to withdraw, upon the expiration of thirty days from the day on which written notice of such withdrawal is received by the CONTRACTING PARTIES, substantially equivalent concessions initially negotiated with the applicant contracting party.

The Protocol of Amendment to GATT was signed without reservation as to Part III of GATT (which includes Article XXVIII) by all of the countries now constituting the European Economic Community (EEC),[2] among others, as well as by the United States. And apparently, in view of language appearing in the Notice of Public Hearing which is before us as exhibit 2, the President had in mind the utilization of the provisions of paragraph 3 of Article XXVIII of GATT to redress the imbalance of tariff concessions between the United States and the EEC arising out of the withdrawal of a German tariff concession on poultry and the subsequent imposition by the EEC of *unreasonable import restrictions* upon United States exports of frozen poultry.

■■ The court may not, of course, review the factual determinations made by the President in connection with the issuance of Proclamation No. 3564. United States v. George S. Bush & Co., Inc., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259 (1940). However, the court can and should, where the legality of a Presidential proclamation is questioned, determine whether the proclamation accords with the laws and international obligations governing and affecting its issuance and render judgment thereupon accordingly. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933);

George E. Bardwil & Sons v. United States, 42 CCPA 118, C.A.D. 583 (1955).

■ As we read paragraph 3 of Article XXVIII of GATT it does not *require* suspension of trade agreement concessions on a most favored nation basis. In fact, favored nation treatment is not even mentioned or implied in paragraph 3. Under paragraph 3 a country having a principal supplying interest or a substantial interest is permitted to withdraw *substantially equivalent concessions initially negotiated with the applicant contracting party.* We construe this language merely to authorize reciprocal action on the part of contracting parties to GATT with respect to modification of tariff concessions, following a breakdown in negotiations and unilateral withdrawal of concessions by a contracting party.

■ Neither does Section 252 of the Trade Expansion Act of 1962 (19 U.S. C.A., Section 1882) authorize the withdrawal of trade agreement tariff concessions on a most favored nation basis, in our opinion. Section 251 of the Trade Expansion Act of 1962 (19 U.S. C.A., Section 1881) provides:

Except as otherwise provided in this title, in section 350(b) of the Tariff Act of 1930, or in section 401 (a) of the Tariff Classification Act of 1962, any duty or other import restriction or duty-free treatment proclaimed in carrying out any trade agreement under this title or section 350 of the Tariff Act of 1930 shall apply to products of all foreign countries, whether imported directly or indirectly.

Thus, section 1881, which must be read together with section 1882, expressly carves out an exception to the most favored nation principle in favor of section 1882 proceedings, among other things, of which section 1882(c) is one of the proceedings excepted.

■ We find the language of section 1882(c) to be clear and free from ambiguity. Section 1882(c) authorizes the President, among other things, to sus-

---

**2.** France, Italy, the Netherlands, Belgium, Luxembourg, and the Federal Republic of Germany.

pend, withdraw, or prevent the application of benefits of trade agreement concessions to products of a country or instrumentality maintaining unreasonable import restrictions which substantially burden United States commerce. The action contemplated by this statute is plainly selective in nature. As applied to the facts of this case section 1882(c) authorizes the President to suspend, withdraw or prevent the application of benefits of tariff concessions to products of the EEC countries in view of the factual findings made in Proclamation No. 3564. Section 1882(c) would not, however, authorize such action to be taken by the President against the products of Spain, the country of origin of the involved merchandise, or against the products of any other country not constituting a part of the EEC bloc. And since the action taken in Proclamation No. 3564 extends to all countries *vis-a-vis* the most favored nation principle, support for such action, if it exists, must be found under section 1351(a) (6).

A number of cases have been called to our attention on the subject of the power of the President to terminate a proclamation. See Barclay & Company, Inc. v. United States, 47 CCPA 133, C.A.D. 745 (1960); United States v. American Bitumuls & Asphalt Co. et al., 246 F.2d 270, 44 CCPA 199, C.A.D. 661 (1957), cert. den. 355 U.S. 883, 78 S.Ct. 150, 2 L.Ed.2d 113 (1957); George E. Bardwil & Sons v. United States, 42 CCPA 118, C.A.D. 583 (1955); United States v. Metropolitan Petroleum Corp. et al., 42 CCPA 38, C.A.D. 567 (1954), cert. den. 348 U.S. 858, 75 S.Ct. 82, 99 L.Ed. 676 (1954); and Alfred Baer v. United States, 8 Cust.Ct. 104, C.D. 585 (1942). While these cases are instructive on the subject of the termination power of the President and generally affirm his power to terminate a proclamation in whole or in part at any time, we do not deem it necessary here to review them since they antedate the enactment of the Tariff Classification Act of 1962 which regulates the effect

of the exercise of such power, and also do not involve the use of the termination power in conjunction with other authority—the posture of the instant case. General Headnote and Rule of Interpretation No. 4 of the Tariff Schedules of the United States states:

4. *Modification or Amendment of Rates of Duty.* Except as otherwise provided in the Appendix to the Tariff Schedules—

\* \* \* \* \* \*

(d) whenever a proclaimed rate is terminated or suspended, the rate shall revert, unless otherwise provided, to the next intervening proclaimed rate previously superseded but not terminated or, if none, to the statutory rate.

There is no question but that if the President had elected here to terminate, pursuant to section 1351(a) (6), all of the proclaimed rates on brandy outstanding and intervening between the statutory rate and the GATT rate, inclusive of the GATT rate, he could have done so without ceremony and the ensuing proclamation would have been self-executing in accordance with General Headnote 4(d). However, the President did not elect to exercise the termination power reposed in section 1351(a) (6) in such an abstract manner.

In this case the President undertook to effect a modification of rates of duty on brandy by way of the addition of rates on this product to subpart B of Part 2 of the Appendix to the Tariff Schedules. Part 2B of the Appendix is reserved for temporary rate modifications proclaimed pursuant to section 1882 proceedings, having been added as such to the Appendix with statutory effect by the Tariff Commission in its Fourth Supplemental Report on the Tariff Classification Study in the interim between the enactment of the Tariff Classification Act of 1962 and the publication of the tariff schedules, all as provided for in Section 101 of the Tariff Classification Act of 1962. See Tariff Classification Study—Fourth Supplemental Report, page 14. And

the rationale of the Tariff Commission for this action is (p. 2 Fourth Sup. Rept.):

> *Explanation:* Since section 350(a) (5) of the Tariff Act of 1930, as amended, has been repealed by section 257(b) of the Trade Expansion Act of 1962 (P.L. 87–794; 76 Stat. 882), headnote 3(d) (ii) has been deleted. The type of action previously provided for in section 350(a) (5) has been provided for with considerably greater detail in section 252 of the Trade Expansion Act (76 Stat. 879 and 880). Since the types and scope of action authorized by section 252 are more varied than those authorized by section 350(a) (5), it is considered preferable to provide for any section 252 actions in a new subpart of part 2 (temporary modifications proclaimed pursuant to trade-agreements legislation) of the appendix to the tariff schedules rather than in a general headnote. * * *

Also, Appendix Headnote 1 reads in relevant part:

> 1. The provisions of this Appendix relate * * * to executive * * actions pursuant to duly constituted authority, under which—
>
> (a) one or more of the provisions in schedules 1 through 8 are temporarily * * * modified * * *.

Thus, the utilization of the termination power of section 1351(a) (6) in conjunction with or as an aid to section 1882 proceedings, which is the use employed at bar, proceeds in derogation to the use of the termination power alone as provided for in General Headnote 4(d).

In this case Proclamation No. 3564 proclaims:

> (1) the termination of that part of any prior proclamation which proclaims rates of duty inconsistent with those provided for in the amendment made by paragraph (2) of this proclamation * * *

and paragraph (2) of that proclamation sets forth the schedule of rates for brandy and other products which are being added to Part 2B of the Appendix. Since this schedule of duty rates is predicated upon a section 1882(c) action taken by the President to temporarily modify duty rates under the tariff schedules, we are of the opinion that the provisions of section 1882(c) are regulatory of any use by the President of the termination power of section 1351(a) (6) in such undertaking. As such, any limitations written into section 1882(c) affecting the scope of Presidential action taken under that statute would be determinative of the scope of the termination power of section 1351(a) (6) exercised in conjunction with the section 1882(c) action or in aid thereof.

As we have concluded herein that upon the basis of the instant facts the President, proceeding under section 1882(c), could only suspend, withdraw, or prevent the application of trade agreement concessions as to EEC countries, we find that the termination power of section 1351(a) (6) could only be utilized here by the President to achieve that result, i. e., the termination of any prior proclamations to the extent that they proclaim rates of duty for products of EEC countries inconsistent with those provided for in the schedule of duty rates set forth in paragraph (2) of the proclamation. However, in Proclamation No. 3564 the President proclaimed that the duty rates provided for in the paragraph (2) schedule were effective as to *all* articles entered, or withdrawn from warehouse, for consumption on and after January 7, 1964. In so doing, he exceeded the authority granted to him in the enabling statute, namely, section 1882(c), and as the result, Proclamation No. 3564 is invalid and void, and we so hold.

The rates of duty for brandy contained in rate column 1 of item 168.20 of the tariff schedules being unaffected by Proclamation No. 3564 by reason of our holding herein, it follows that plaintiff's claim for classification of the involved Spanish brandy thereunder is well founded, and the protest is sustained.

Judgment will be entered herein accordingly.